# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| GRANT MORGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 1:07-cv-01142-STA-egb |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER REVERSING THE DECISION OF THE COMMISSIONER AND REMANDING PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)**

Plaintiff Grant Morgan filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("the Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on May 3, 2006. On August 16, 2006, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision.

Plaintiff then filed for judicial review in this Court. On September 28, 2008, the Court granted Plaintiff's motion to remand his claim for the Commissioner to consider new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g). (ECF No. 39.) On October 31, 2008, the Appeals Council vacated the final decision of the Commissioner and remanded the

1

case for further administrative proceedings. On March 5, 2010, after a supplemental hearing on October 22, 2009, the ALJ again found that Plaintiff was not disabled. The case was reopened in this Court after the Commissioner filed a notice that the matter was ready for judicial review after remand. (ECF No. 41.) For the reasons set forth below, the decision of the Commissioner is **REVERSED**, and the action is **REMANDED** for a reassessment of Plaintiff's credibility and the medical opinions in the record pursuant to sentence four of 42 U.S.C. § 405(g).

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7] "[W]hen there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration."[8]

The Court may immediately award Plaintiff benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."[9] "A judicial award of benefits is proper only where the proof of disability is overwhelming or [when] the proof of disability is strong and evidence to the contrary is lacking."[10] These factors are not present in this case, and, therefore, an immediate award of benefits is not appropriate. However, a remand pursuant to sentence four of § 405(g) is appropriate because all essential issues have not been resolved.

Plaintiff was born on August 5, 1966, and was thirty-seven years old on his alleged onset date. He took special education classes in high school and later received his GED. He has past relevant work as a press operator and kitchen helper. Plaintiff alleges disability beginning July

---

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

[8] *Faucher v. Secretary*, 17 F.3d 171, 175 (6th Cir. 1994).

[9] *Id.* at 176 (citations omitted).

[10] *Id.*

11, 2004, due to nerve problems, sleep apnea, back problems, diabetes, high blood pressure, depression, and mild mental retardation. Plaintiff last worked in January 2004.

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements through December 31, 2009; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: diabetes mellitus, hypertension, osteoarthritis, obesity, sleep apnea, and borderline intellectual functioning; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform light work except that he can only stand or walk three to four hours and sit four to five hours; he is limited to following simple instructions on a regular basis; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual with a limited education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[11]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[12] The claimant bears the ultimate burden of establishing an entitlement to benefits.[13]

---

[11] R. 515-526.

[12] 42 U.S.C. § 423(d)(1).

[13] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[14]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

    1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

    2. An individual who does not have a severe impairment will not be found to be disabled.

    3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

    4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

    5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[15]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[16] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform his past relevant work, there is a substantial number of jobs that exist in the national economy that he can perform.

---

[14] *Id.*

[15] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[16] 20 C.F.R. § 404.1520(a).

Plaintiff argues that substantial evidence does not support the ALJ's findings and that the ALJ did not follow all the legal rules in making his decision. He specifically argues that the ALJ failed to properly evaluate the opinion evidence and, instead, substituted his own judgment as to Plaintiff's cognitive abilities; did not adequately consider the impact of Plaintiff's mental limitations on his ability to perform unskilled work when making the residual functional capacity finding; failed to properly evaluate his credibility; and mistakenly relied on the vocational expert's testimony which was inconsistent with the residual functional capacity finding. The Court finds that a remand is in order because the ALJ failed to correctly assess both the medical evidence in the record and Plaintiff's credibility.

The ALJ determined that Plaintiff suffers from borderline intellectual functioning and is limited to following simple instructions on a regular basis. In making this determination as to Plaintiff's level of mental functioning, the ALJ discounted the opinion of consultative examiner Ann Quinn Phyfer, Ph.D., that Plaintiff functioned in the mild mental retardation range based, in part, on the ALJ's view that Plaintiff's "malingering" resulted in lower scores.[17] While the ALJ is correct that an ALJ may consider that a claimant exaggerated his impairments when determining credibility,[18] in the present case, it appears that the ALJ arrived at his "malingering" conclusion based on a faulty reading of the record.

Dr. J. Gray's treatment note of July 19, 2007, states that Plaintiff was "confronted" with malingering issues including not giving his best effort on an IQ test, hoping that a recent hospitalization would increase his chances of having his application approved, and not advertising his lawn service for fear that it would hurt his chances of having his application

---

[17] R. 519, 1010, 1181.

[18] *See Cole v. Secretary of Health and Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987).

approved.[19] Despite Mr. Gray's concern that Plaintiff may have been malingering, he still diagnosed him with major depressive disorder with a GAF of 50.[20]

Aside from this single notation, Plaintiff's treating physicians and the consultative examiners did not question his credibility. For example, Dr. Phyfer noted that Plaintiff "was not an effective historian," not because of any "guardedness" on his part but, instead, due to his "limited ability to organize material into a logical, coherent chronological sequence."[21] Dr. Phyfer specifically found that Plaintiff was cooperative, unguarded, genuine, and appeared to "exert his best effort" on the IQ test.[22] She also noted that he approached the IQ test with enthusiasm, and she determined that the results showing Plaintiff to function in the mildly mentally retarded range were a "valid and reliable" measure of his intellectual functioning.[23]

Dr. Paul Brown stated that Plaintiff's "attitude and cooperation" during the interview with him was "good." Plaintiff appeared "open and honest in answering questions."[24] Dr.

---

[19] R. 1121.

[20] The GAF scale is no longer found in the latest revision of the *Diagnostic and Statistical Manual of Mental Disorders*, the DSM-5. It has been replaced by a system called "WHODAS." *See* Gold, Liza H., "DSM-5 and the Assessment of Functioning: The World Health Organization Disability Assessment Schedule 2.0 (WHODAS 2.0)," *J. Am. Acad. Psychiatry Law* 42:2:173-181 (June 2014) available at http://www.jaapl.org/content/ 42/2/173.full. However, at the time of Plaintiff's diagnosis, the GAF scale was still used to permit clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32, 34 (Text Revision 4th ed.2000). A score of 41–50 indicated: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

[21] R. 1180.

[22] R. 1181.

[23] R. 1187.

[24] R. 1004.

Robert Sanner described Plaintiff as "cooperative and reliable,"[25] and Dr. Frank Kupstas described Plaintiff as "generally credible."[26]

The ALJ misread the August 2007 note by Plaintiff's medication nurse, Evelyn Harris, as documenting a second incident of perceived "malingering," but Ms. Harris' note was, instead, merely a reference to Mr. Gray's July 2007 notation.[27] It is well-settled that the Commissioner is not required to fully credit subjective complaints.[28] However, substantial evidence cannot support a finding that is based on an inaccurate reading of the record. Compounding the effect of the ALJ's error is the fact that he used Plaintiff's alleged malingering, in part, to reject Dr. Phyfer's opinion that Plaintiff suffered from mild mental retardation.[29]

The ALJ also misstated Plaintiff's testimony. According to the ALJ, Plaintiff testified that "he has trouble reading and writing small, simple words."[30] Plaintiff actually testified that he is **only** able to read small, simple words.[31] In finding that Plaintiff was not as mentally impaired as alleged, the ALJ also looked at the fact that Plaintiff has obtained his GED.

---

[25] R. 197.

[26] R. 374.

[27] R. 518 (citing R. 757-773).

[28] *Wooten v. Apfel*, 108 F. Supp.2d, 921, 928 (E.D. Tenn. 2000) (citing *Fraley v. Secretary of Health & Human Servs.*, 773 F.2d 437, 440 (6th Cir. 1984)).

[29] R. 519. Dr. Phyfer administered IQ tests on two occasions, approximately two years apart. Both sets of tests revealed a full scale IQ of 69. R.1179-1182; 1183-1189.

[30] R. 523.

[31] R. 1635.

However, it does not appear that the ALJ considered the fact that Plaintiff testified that he took the exam twelve times before he passed.[32]

Further compounding the ALJ's errors in his credibility findings is the weight given to Plaintiff's daily activities. The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his impairments to be "not credible to the extent they are inconsistent with the . . . residual functional capacity assessment."[33] In support of this conclusion, the ALJ partly relied on Plaintiff's daily activities. Plaintiff testified that he puts his son on the school bus, takes his wife to work, and occasionally cooks, does laundry, vacuums and sweeps.[34] Minimal activities, such as these, may not be used to discredit a Plaintiff's allegations.[35] Thus, the Court finds that the ALJ gave undue weight to the Plaintiff's activities of daily living in making the credibility determination.

---

[32] R. 523-524, 1634.

[33] R. 523.

[34] The ALJ asserts that, because Plaintiff testified to a significant reduction in his daily activities at the hearing he presided over in October 2009 when compared to his reported daily activities three years earlier at the hearing in May 2006, Plaintiff is not credible. R. 523. As noted by Plaintiff, it is reasonable that Plaintiff's symptoms, such as excessive daytime fatigue, have worsened over that three-year period, requiring a reduction in his daily activities.

[35] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007) (finding that activities such as driving, cleaning one's apartment, caring for pets, doing laundry, reading, watching television, were minimal daily functions that "are not comparable to typical work activities.") *See also Cole v. Astrue,* 661 F.3d 931, 939 (6th Cir. 2011) ("As this Court has recently held, the ALJ's focus on the claimant's ability to do certain activities in discounting the treating source's opinion does not constitute 'good reasons' for doing so when the claimant's testimony and other record evidence contradict the ALJ's finding.")

The ALJ's credibility assessment of Plaintiff is based on an inaccurate interpretation of the evidence and cannot constitute substantial evidence to support a denial of benefits.[36] While any one of these errors, in and of itself, might not warrant a remand, combined they lead to the conclusion that the decision denying Plaintiff's applications for benefits must be reversed.

Having determined that the decision must be reversed, the Court must decide whether it is appropriate to remand this case or to direct the payment of benefits. Because the record does not establish that Plaintiff is entitled to benefits or that all essential facts have been resolved, it is appropriate to remand this case for further proceedings, including a reassessment of Plaintiff's credibility and the medical opinion evidence in the record. The decision of the Commissioner is **REVERSED**, and the action is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: May 1, 2017.

---

[36] *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 527 (6th Cir. 2014) ("Although the record contains some evidence supporting the ALJ's decision to accord Papadakis' opinion little weight, it is not clear that the ALJ would have come to the same conclusion had she not mischaracterized the record….")